UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DEWEESE,

                Plaintiff,        Civil Action No. 17-14081
                                      Honorable Marianne O. Battani
                                      Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 14]

Plaintiff David Deweese ("Deweese") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Deweese is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Deweese's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.     REPORT**

    **A.     Background**

Deweese was 41 years old at the time of his alleged onset date of March 28, 2014, and at 5'10" tall weighed approximately 220 pounds during the relevant time period. (Tr. 20, 295, 300). He completed the eleventh grade but had no further education. (Tr. 21, 301). He drove a forklift and worked construction (building grain bins) before stopping work on April 26, 2012, after he suffered a head injury on the job. (Tr. 21, 300-01). He now alleges disability primarily as a result of back, knee, neck, and shoulder pain; seizures; carpal tunnel syndrome; and anxiety and depression. (Tr. 20, 300).

After Deweese's applications for DIB and SSI were denied at the initial level on November 30, 2015[1] (Tr. 127-42), he timely requested an administrative hearing, which was held on July 11, 2017, before ALJ Theodore Kim (Tr. 15-38). Deweese, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Michelle Ross. (*Id.*). On August 4, 2017, the ALJ issued a written decision finding that Deweese is not disabled under the Act. (Tr. 103-20). On September 26, 2017, the Appeals Council denied review. (Tr. 5-9). Deweese timely filed for judicial review of the final decision on December 19, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Deweese's medical record, function and disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

---

[1] Deweese had filed previous applications for DIB and SSI. On March 27, 2014, ALJ Patricia McKay issued a written decision finding that Deweese was not disabled under the Act. (Tr. 42-54). On May 6, 2015, the Appeals Council denied review, and Deweese did not appeal this claim any further. (Tr. 59-62).

2

## B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Deweese is not disabled under the Act. At Step One, the ALJ found that Deweese has not engaged in substantial gainful activity since March 28, 2014 (the alleged onset date). (Tr. 106). At Step Two, the ALJ found that he has the severe impairments of traumatic brain injury with subdural hematoma and epilepsy, left foot degenerative changes, right knee meniscus tear and chondrosis, right shoulder supraspinatus and tendinosis, degenerative disc disease of the cervical spine with stenosis and spondylosis, lumbar and thoracic spine spondylosis, mood disorder, obesity, left shoulder tendinosis, bilateral carpal tunnel syndrome, anxiety, and depression. (*Id.*). At Step Three, the ALJ found that Deweese's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Deweese's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations: can frequently handle, finger, and feel with his bilateral upper extremities; can frequently push or pull or operate foot controls with both lower extremities; can occasionally balance, stoop, kneel, crawl, and crouch, but can never climb ladders, ropes, or scaffolds; can never be exposed to unprotected heights and moving mechanical parts; can tolerate occasional exposure to wetness and/or humidity and vibration; can understand, remember, and carry out simple instructions and make simple work-related decisions; and can occasionally deal with the public. (Tr. 109-10).

At Step Four, the ALJ found that Deweese is not capable of performing any of his past relevant work. (Tr. 118). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Deweese is capable of performing the jobs of bench assembler (110,000 jobs nationally), inserter (90,000 jobs), and

parts checker (75,000 jobs). (Tr. 119). As a result, the ALJ concluded that Deweese is not disabled under the Act. (Tr. 120).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.     Analysis

In his motion for summary judgment, Deweese argues that: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ erred in failing to consider the side effects of his medications; (3) the ALJ failed to provide legitimate reasons for discounting the lay evidence from his mother; and (4) the ALJ erred in failing to include an explicit function-by-function assessment in his RFC finding. (Doc. #11 at 12-19). Each argument is addressed below.

#### 1.     *The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Deweese retains the RFC to perform a reduced range of sedentary work, noting that his allegations of disabling pain are at odds with the objective medical evidence of record, which he thoroughly discussed. (Tr. 111-18). For example, the ALJ noted that Deweese's treatment notes show that he routinely had full muscle strength and normal sensation in the upper and lower extremities, ambulated independently, maintained balance, and had normal grip strength, reflexes, coordination, dexterity, gait, and station. (Tr. 111-14, 369, 397, 400-01, 410, 444, 446, 558-59). In formulating Deweese's RFC, the ALJ also gave great weight to the opinions of the two state agency medical consultants (Joe Deloach, Ph.D. and Dale Blum, M.D.), who together opined that Deweese can perform simple,

sedentary work.² (Tr. 74-77, 115). Additionally, in assessing Deweese's RFC, the ALJ cited to his reported daily activities, which include preparing simple meals, doing laundry, shopping in stores, and mowing the lawn. (Tr. 23, 110, 309-10). Thus, the ALJ properly formulated Deweese's RFC based on all of the relevant evidence, and, as discussed below, the record supports his finding.

Deweese articulates several challenges to the ALJ's RFC finding. First, Deweese contends that the ALJ erred in evaluating the evidence of his neck pain and carpal tunnel syndrome. (Doc. #11 at 14-15). Specifically, Deweese argues that the ALJ failed to recognize that he has "decreased range of motion in his neck"; "shooting pain in his neck and back that is constant" and that "travels into his shoulder and arm"; "experiences numbness and tingling in his hands and cannot hold on to objects"; and "has difficulty opening doors." (*Id.*). But, Deweese is simply incorrect in asserting that the ALJ ignored these types of complaints. Indeed, the ALJ specifically noted that, during his November 10, 2015 consultative examination, Deweese complained of neck, back, and hand pain, and had decreased range of motion. (Tr. 113, 443-47). Similarly, the ALJ noted that, in a follow-up neurology visit one week later, Deweese again

---

² As the Commissioner points out, the ALJ's RFC finding deviates slightly from the opinions of these two consultants. (Doc. #14 at 11, n. 5). In particular, Dr. Blum opined that Deweese can only occasionally push and pull with the upper and lower extremities, and Dr. Deloach opined that he needs "no to minimal contact with co-workers and the public." (Tr. 74-77). Deweese has not challenged the weight assigned to these opinions, however, and thus any such argument is waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped arguments are waived). Moreover, the jobs the ALJ relied on at Step Five of the sequential process are sedentary, with only occasional lifting, carrying, pushing, and pulling of 10 pounds or less, and none of them require significant interaction with people. (Tr. 34, 119). *See* Dictionary of Occupational Titles ("DOT") No. 726.685-066, 1991 WL 679631 (Jan. 1, 2016) (bench assembler/semiconductor bonder); DOT No. 713.687-026, 1991 WL 679273 (Jan. 1, 2016) (lens inserter); DOT No. 669.687-014, 1991 WL 686074 (Jan. 1, 2016) (parts checker/dowel inspector). Thus, any error in the ALJ's omission of these limitations is harmless. *See, e.g., Ostrowski v. Soc. Sec. Comm'r*, 2017 WL 7049175, at *8 (Dec. 21, 2017) (remand is not warranted where it is an "idle and useless formality").

7

reported persistent symptoms of neck pain, shoulder pain, and numbness and tingling in his hands, and exhibited decreased range of motion and decreased strength, with sensory deficits in his hands and fingers. (Tr. 113, 532-33). Nevertheless, as the ALJ noted, EMG testing revealed only mild carpal tunnel syndrome (Tr. 114, 515), and Deweese's physician, Thomas O'Hara, Jr., M.D., merely recommended physical therapy for these conditions, after which Deweese reported considerable improvement. (Tr. 113, 531, 532-33). Indeed, as the ALJ observed, by January 2016, Dr. O'Hara stated, "Since the patient's neck and shoulder pain have resolved with physical therapy and since his bilateral carpal tunnel syndrome is currently asymptomatic, there is no indication for further treatment." (Tr. 114, 515).

With respect to Deweese's neck pain, the ALJ also noted that a CT scan of his cervical spine taken in August 2016 revealed degenerative changes with severe foraminal stenosis at C5-C6. (Tr. 114, 572-73). As a result, Deweese underwent a cervical spine decompression surgery on September 23, 2016. (Tr. 114, 563-64). The ALJ further noted that, at a follow-up visit to his primary care provider on October 4, 2016, Deweese reported diffuse neck pain, but indicated that it did not limit his activities. (Tr. 114, 546). Moreover, the ALJ noted that at an October 18, 2016 evaluation with a movement disorder specialist, Deweese had normal muscle strength, tone, reflexes, and sensation in all limbs. (Tr. 114, 558-59). While his gait was slow and antalgic, he had preserved arm swing and was able to keep his balance during tandem walking. (*Id.*). The ALJ also noted that there was no evidence of any additional follow up or treatment. (Tr. 114). Thus, where the evidence showed that Deweese's symptoms improved with treatment, and there was objective evidence of normal functional abilities, the ALJ reasonably declined to find additional limitations stemming from Deweese's neck pain.

Deweese next argues that the ALJ should have given greater weight to his testimony

8

"regarding the existence and severity of [his] seizures[,]" which allegedly stem from his May 2012 head injury. (Doc. #11 at 14). But, although Deweese claims that these seizures are supported by medical evidence (*Id.* at 14-15), he fails to cite to any *objective* medical evidence supporting his allegations that his seizures cause greater functional limitations than those imposed by the ALJ. Rather, Deweese cites only to a single treatment note, from October 28, 2014, in which *he reported* that he had "episodes of what he calls shakes" and "occasionally" had blackouts that lasted a few seconds. (*Id.* (citing Tr. 400)). The ALJ noted, however, that during that same visit, the doctor recommended an EEG, which was unremarkable. (Tr. 111, 400-01, 416). The ALJ also noted that, at his January 2015 neuropsychiatric evaluation with Amanda Schafer, Ph.D., Deweese reported a history of subdural hematoma following his May 2012 head injury, but Dr. Schafer noted that follow-up treatment notes revealed that the hematoma was fully resolved. (Tr. 112, 367-71). The ALJ also noted that Dr. Schafer was unable to opine as to Deweese's capacity to work from a cognitive perspective, because there was a strong indication that he did not put forth full effort during testing. (Tr. 112, 370-71). Finally, the ALJ noted that, in January 2016, Deweese reported "no recent seizure activity." (Tr. 521). Thus, the ALJ reasonably discounted Deweese's allegations of disabling limitations due to seizures where these allegations were inconsistent with his own reports to providers and unsupported by the medical evidence.

Deweese next argues that the ALJ erred in evaluating his knee impairment, claiming that the pain in his knees "can make it impossible for him to walk" and causes him to stumble, and that he often walks into walls if he does not hold onto them. (Doc. #11 at 15). As the ALJ observed, however, Deweese had right arthroscopic knee surgery to repair a torn meniscus in December 2014 (Tr. 111-12, 376-78), but by January 26, 2015, he had improved range of motion

and only a mild limp (Tr. 112, 476). In February 2015, Deweese reported that he was "improving gradually," describing some discomfort with weight bearing at the end of the day. (Tr. 112, 475). On physical examination, however, he had normal range of motion, stability, and strength. (*Id.*). The ALJ also noted that, in March 2015, Deweese reported some occasional right knee discomfort, but said he was "doing fairly well" overall; on examination, he had good range of motion and full extension and flexion.[3] (Tr. 112, 474). In summary, Deweese's ability to ambulate without assistance is well-documented throughout the record, and Deweese has not established that any additional limitations were warranted.

Finally, Deweese claims that his "depression is severe" (Doc. #11 at 15), but this argument gets him nowhere, as the ALJ found his depression to be a severe impairment (Tr. 106). Beyond this, Deweese "gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in his RFC assessment." *Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (emphasis in original). Where Deweese bears the burden of showing greater limitations stemming from his depression, and where he has failed to articulate any such limitations, his argument fails.

For all of these reasons, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

### 2. *The ALJ Properly Evaluated Deweese's Medication Side Effects*

In his decision, the ALJ found that Deweese's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical

---

[3] While Deweese also complained of left knee pain in February 2015, he had good range of motion, strength, and stability (Tr. 475), and x-rays were unremarkable (Tr. 373). Moreover, a March 2015 exam of Deweese's left knee was "entirely benign." (Tr. 474).

10

evidence and other evidence in the record …." (Tr. 111). In his motion, Deweese cites to Social Security Ruling ("SSR") 96-7p,[4] 1996 WL 374186 (July 2, 1996), arguing that, in evaluating his subjective complaints, the ALJ failed to consider the side effects of his medications. (Doc. #11 at 12-13). For the reasons set forth below, the Court disagrees.

To begin with, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, such an evaluation will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *4 (Oct. 25, 2017).

---

[4] SSR 96-7p has been superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *2. The new ruling, which applies to decisions or determinations made after March 28, 2016, does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

In his decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 110). And, in considering Deweese's subjective allegations, the ALJ discussed his hearing testimony and other statements regarding his symptoms; his medication and other methods used to treat pain; his treatment history; and his daily activities. (Tr. 108-18). All of these were proper considerations. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Additionally, the ALJ observed that Deweese's allegations of disabling pain were inconsistent with the objective medical evidence of record (Tr. 111-18), which was also appropriate. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Deweese argues, though, that the ALJ erred in failing to consider the side effects of his medications, which he claims include "extreme fatigue, migraines, light headedness and dizziness." (Doc. #11 at 13). SSR 16-3p provides that, in evaluating the intensity, persistence, and limiting effects of an individual's symptoms, one of the factors to be considered is the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[.]" *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *7-8. But, when evaluating a claimant's subjective complaints, an ALJ is only required to *consider* the factors set forth in SSR 16-3p, not *explicitly discuss* each factor. *See Ausbrooks v. Astrue*, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013) ("An ALJ, however, is not required to explicitly discuss every § 404.1529(c)(3) factor in [the credibility] assessment[.]"). Moreover, in this case, the ALJ did explicitly discuss Deweese's allegations of fatigue, headaches, and dizziness. (Tr. 110 (noting that Deweese "alleged fatigue"), 111 (noting that Deweese complained of "poor memory, headaches, dizziness, and depression")). The ALJ then assessed a restrictive RFC that reasonably accounted for these symptoms, finding that Deweese is limited to a reduced range of sedentary work. (Tr. 109-10).

In arguing that remand is warranted, Deweese fails to point to any objective medical evidence demonstrating that medication side effects would further limit his abilities. *See Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) ("Although Hopkins complained of drowsiness, nausea, and blurred vision, these conditions were not documented in the record."); *Rogers-Lee v. Comm'r of Soc. Sec.*, 2015 WL 5162269, at *11 (E.D. Mich. July 21, 2015) ("[O]ther than some subjective complaints of being sleepy, there is no objective evidence that the side-effects of her medications, drowsiness or otherwise, have an adverse effect on her ability to work."). Rather, Deweese points only to his own testimony, statements made by his mother in a third party function report, and a single treatment note documenting a subjective report that increasing Deweese's Neurontin dose caused certain unspecified side effects. (Doc. #11 at 13 (citing Tr. 28, 324, 331, 396)). The ALJ reasonably found, however, that Deweese's and his mother's claims that he suffered from medication side effects were not supported by the evidence of record[5] (Tr. 110-11), and the ALJ's decision to discount Deweese's allegations of side effects is supported by substantial evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004) (rejecting claimant's allegations of side effects of dizziness and drowsiness where the "medical records make no indication that [the claimant] reported such side effects to any of her physicians").

In sum, in evaluating Deweese's subjective complaints and the effects of his impairments, the ALJ fairly and properly considered the record evidence, including Deweese's medical records, statements, and activities of daily living. The Court finds no reason to disturb the ALJ's findings because he observed Deweese firsthand, and his assessment is supported by

---

[5] For example, when Deweese established care with a new primary care provider in October 2014, he complained of headaches and dizziness, but attributed these symptoms to his 2012 head injury, not to medication side effects. (Tr. 111, 410). Moreover, he subjectively denied any headaches or dizziness in January 2016. (Tr. 531).

substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

### 3. The ALJ Adequately Considered Deweese's Mother's Third-Party Function Report

Next, Deweese contends that the ALJ gave inadequate reasons for discounting the third party function report completed by his mother, Martha Deweese. (Doc. #11 at 15-17). In that report, Mrs. Deweese indicated that Deweese suffers from random mini-seizures, chronic pain throughout his body, confusion, forgetfulness, and irritability. (Tr. 324). She further described a "short attention span" and indicated that Deweese has difficulty finishing what he starts and following spoken instructions. (Tr. 329). The ALJ specifically considered Mrs. Deweese's third party function report, finding it "generally consistent" with Deweese's statements and testimony; however, he gave this report little weight due to its "inconsistency with the objective medical evidence and medical opinions of record." (Tr. 117). Deweese now challenges this aspect of the ALJ's decision, asserting that Mrs. Deweese's report should have been given great weight, as he claims it is "supported by not only [his] testimony, but by medical evidence." (Doc. #11 at 16, 17). The Court disagrees.

To begin with, the Court notes that Mrs. Deweese's third-party function report is essentially duplicative of Deweese's own self-reported limitations. As set forth above, *supra* at 6-13, substantial evidence supports the ALJ's finding that Deweese's subjective allegations of symptoms – including with respect to seizures and disabling pain – were inconsistent with the objective medical evidence of record, the opinions of the state agency consultants, and Deweese's admitted daily activities. Thus, the ALJ's justifications for discounting Deweese's self-reported limitations equally support his treatment of Mrs. Deweese's report. *See Snowden v.*

14

*Comm'r of Soc. Sec.*, 2014 WL 1052244, at *7 (W.D. Mich. Mar. 19, 2014) (ALJ can properly discount lay witnesses' testimony if "it [is] not supported by the medical record").

Moreover, turning to Mrs. Deweese's allegations of memory limitations (forgetfulness, confusion, short attention span, etc.), the Court notes that the ALJ limited Deweese to jobs requiring him only to understand, remember, and carry out simple instructions and make simple work-related decisions. (Tr. 109-10). In doing so, the ALJ discussed Deweese's January 2015 neuropsychiatric evaluation, noting that, despite Deweese's alleged memory impairment, Dr. Schafer observed that "he had no difficulty following directions and did not need directions repeated" and "worked methodically." (Tr. 112, 369). The ALJ also noted that, at a therapy evaluation in September 2015, Deweese exhibited normal remote memory and only moderately impaired immediate memory. (Tr. 115, 437). Moreover, the ALJ noted that, at follow-up visits in July 2016 and May 2017, Deweese's short and long term memory were intact. (Tr. 115, 117-18, 603, 627). Thus, the ALJ reasonably discounted Mrs. Deweese's reports of poor memory as inconsistent with the objective medical evidence, and Deweese has cited no evidence to the contrary. Thus, the Court finds no error in the ALJ's evaluation of Mrs. Deweese's third party function report. *See Snowden*, 2014 WL 1052244, at *7.

### 4. In Formulating Deweese's RFC, the ALJ Did Not Erroneously Fail to Conduct a Function-by-Function Assessment

Finally, Deweese argues that the ALJ did not comply with SSR 96-8p by failing to include in his decision a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). (Doc. #11 at 17-19 (citing *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *1 (July 2, 1996))). But, the Sixth Circuit has expressly rejected this very argument, stating:

> … "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." …

> "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)); *see also Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (holding that the ALJ met the requirements of SSR 96-8p where the medical evidence supported an assessment of medium work capacity). Here, the ALJ discussed Deweese's testimony and reports of symptoms, as well as the medical records – including objective findings regarding Deweese's muscle strength in the upper and lower extremities and his ability to ambulate – and the relevant opinion evidence. (Tr. 109-18). The ALJ then determined that Deweese is capable of performing sedentary work, except that he can frequently handle, finger, and feel with his bilateral upper extremities; and frequently push or pull or operate foot controls with both lower extremities. (Tr. 109-10). No more was required. *See White v. Colvin*, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Deweese's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: October 9, 2018                                  s/David R. Grand
Ann Arbor, Michigan                                     DAVID R. GRAND
                                                        United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 9, 2018.

                                                        s/Eddrey O. Butts
                                                        EDDREY O. BUTTS
                                                        Case Manager